UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

GREGORY RUSSELL, et al.,          ]
                                  ]
        Plaintiffs,               ]
                                  ]
        vs.                       ]     2:06-CV-01376-LSC
                                  ]
CITY OF HOOVER, et al.,           ]
                                  ]
        Defendants.               ]

MEMORANDUM OF OPINION

I.   Introduction.

The Court has for consideration a motion for summary judgment,

which was filed by the defendants, City of Hoover, Alabama, Jehad Al-Dakka

("Al-Dakka"), and Rickey Williams ("Williams") (collectively, "Defendants"),

on February 7, 2008.  (Doc. 36.)  Plaintiffs Gregory and Ramona Russell have

sued Defendants for violations of their Fourth and Fifth Amendment rights

pursuant to 42 U.S.C. § 1983 ("§ 1983"), as well as violations of Alabama

state     law.     (Doc.     1.)[1]       Plaintiffs'     §     1983     official-

---

[1]On August 2, 2006, this Court granted Plaintiffs' motion to amend their
Complaint.  However, according to the "Administrative Procedures for Filing, Signing,
and Verifying Pleadings and Documents in the District Court Under the Case Manage-
ment/Electronic Case Files (CM/ECF) System in the United States District Court for the
Northern District of Alabama, which was adopted by this Court in General Order 04-0001,

capacity claims against Williams and Al Dakka have been dismissed.  (Doc.

16.)  Defendants seek summary judgment on Plaintiffs' remaining claims.

The issues raised in Defendants' motion have been briefed by both parties[2]

and are ripe for review.  After full consideration of the legal arguments and

when a motion for leave to file an amended complaint is granted, the "attorney must file electronically an exact duplicate of the proposed document."  (Procedures Manual at II.E.4.)  Plaintiffs have not complied with this procedure.  (*See* Docket.)  Therefore, the original Complaint controls.  (Doc. 1.)  Moreover, the Court notes that Plaintiffs never sought to file the proposed amended complaint and cure their error after it was specifically referenced in a Court Order on September 18, 2006.  (Doc. 16 at 3 n.1.)

[2]Defendants have asked this Court to strike Plaintiffs' opposition brief as untimely for failing to reference evidence when discussing facts, and for ignoring requirements regarding statements of fact.  (Doc. 47.)  According to the briefing schedule set forth in Appendix II of this Court's Uniform Initial Order (Doc. 12), Plaintiffs' responsive submission was due February 28, 2008.  On February 29, Plaintiffs filed a three-page response, which included a request for a seven-day extension.  (Doc. 41.)  On March 5, 2008, the response brief was filed (Doc. 42) with a formal request to file out of time (Doc. 43).  Plaintiffs' motion to file out of time will be granted.

Defendants' other objections to Plaintiffs' response submission are valid.  Plaintiffs' brief does not comply with the rules set forth in Appendix II.  However, Defendants' initial submission also does not comply with those rules.  Initial briefs were limited to thirty pages.  (Doc. 12 at 14.)  That thirty-page brief is supposed to contain "in separately identified sections, (i) a statement of allegedly undisputed relevant material facts and (ii) a discussion of relevant legal authorities."  (*Id.*)  Without requesting leave to exceed the page limit, Defendants filed approximately twenty-eight pages of legal argument (Doc. 38) and, separately, eight pages of statements of fact (Doc. 39).

Defendants' motion to strike Plaintiffs' brief will be denied.  Because Defendants' statements of fact may be stricken for failure to comply with the Court's requirements, the Court will not deem them admitted as Defendants request.  Rather, this Court has thoroughly reviewed the evidentiary record and will consider all the evidence submitted in the light most favorable to Plaintiffs.

evidence submitted, Defendants' motion will be granted in part and denied in part.

II.    Facts.[3]

During the time period relevant to this cause of action, Williams and Al-Dakka were employed as police officers by the City of Hoover.   Around 9:00 p.m., on July 15, 2004, Williams and Al-Dakka received a 911 operator dispatch regarding a possible domestic violence incident, and the two officers responded to the address given in the dispatch call.   The parties all agree that the apartment address named in the dispatch was incorrect. However, the Court is presented with two very different stories of what occurred after the officers arrived.

According to Defendants, the officers knocked on the door of the apartment described in the dispatch call and announced, "Hoover Police." Gregory Russell, an African-American male, opened the door several minutes later wearing only a pair of black pants.   The officers testified that Mr.

---

[3] All reasonable doubts about the facts have been resolved in favor of the nonmoving party.   *See Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002).   These are the "facts" for summary judgment purposes only.   They may not be the actual facts.   *See Cox v. Adm'r U.S. Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11th Cir. 1994).

Russell was extremely agitated, sweating profusely, and breathing heavily. Mr. Russell began backing into the apartment, and they stepped inside. Mr. Russell immediately took a "fighter's stance," clenched his fists, and gnashed his teeth. Deciding that Mr. Russell's actions were warning signs of aggressive behavior and indicative of domestic violence perpetrators, Williams tried to talk to Mr. Russell to diffuse the situation. Mr. Russell, however, became even more agitated and repeatedly yelled, "Y'all need to get out of my house!" When Williams reached for Mr. Russell's left arm, Mr. Russell swung and charged at Williams. The officers then used physical force to subdue and arrest Mr. Russell. They testified that Mr. Russell ignored their verbal commands to stop resisting and calm down. After forty to forty-five seconds of struggling, Mr. Russell was handcuffed and escorted to a patrol car. The police report states that Mr. Russell was charged with obstruction of governmental operations and resisting arrest.

Mrs. Russell tells a different story. According to her, she had gone to sleep on the evening of July 15, 2004, and was awakened by beating on the windows and doors, cursing, profanity, and yelling. She shouted to the individuals outside that she needed to put proper clothes on, and they

continued to beat and kick the door.  When Mrs. Russell headed for the door, she saw her husband coming out of the bathroom.  They approached the door together and he opened the door—which, at that point, already had the latch torn off and was coming loose.

Mrs. Russell said Al-Dakka asked her husband why it took so long to open the "M. F." door, and before Mr. Russell could explain, Al-Dakka told him he was under arrest for domestic violence.  Mrs. Russell testified that Al-Dakka then lunged at her husband, hit him, and called for other officers—who threw Mr. Russell down and cursed him while he "hollered for mercy."[4]

Mrs. Russell said that when the officers told her they were arresting her husband for domestic violence, she showed them her identification and they realized they had the "wrong people."  The officers then told her that Mr. Russell was being arrested for obstructing a government procedure and resisting arrest—and asked Mrs. Russell for help locating the correct address for the possible domestic violence call.

---

[4]Mrs. Russell's testimony regarding the involvement of Williams in this altercation is vague, but Williams himself has testified that he was involved in physically subduing and arresting Mr. Russell.

III.    Standard.

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the evidence] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The movant can meet this burden by presenting evidence showing that there is no genuine dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322-23.  In evaluating the arguments of the movant, the court must view the evidence in the light most favorable to the nonmoving party.  *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996).

Once the moving party has met his burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [her] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)). "A factual dispute is genuine only if a 'reasonable jury could return a verdict for the nonmoving party.'" *Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002) (quoting *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1437 (11th Cir. 1991)).

IV.   Analysis.

A.   Section 1983 Claims.

In their Complaint, Plaintiffs make § 1983 claims based on violations of their Fourth and Fifth Amendment rights.  However, Plaintiffs' response memorandum does not develop any legal argument regarding their Fifth Amendment due process claim.  (Doc. 42.)  Aside from bare assertions that their due process rights were violated, Plaintiffs focus their entire brief on law and evidence supporting their Fourth Amendment claim that Defendants' entry into the Russell home and subsequent arrest were unconstitu-

tional.  Therefore, the Court will dismiss Plaintiffs' § 1983 claim founded on

violation(s) of the Fifth Amendment, *see Flanigan's Enters., Inc. v. Fulton*

*County, Ga.*, 242 F.3d 976, 987 n.16 (11th Cir. 2001) (holding that a party

waives an argument if the party "fail[s] to elaborate or provide any citation

of authority in support" of the argument), and address the alleged

violation(s) of Plaintiffs' Fourth Amendment rights.

       1.    City of Hoover.

    The City of Hoover contends Plaintiffs have failed to adduce sufficient

evidence to hold it liable under § 1983 for the actions of its officers on July

15, 2004.  42 U.S.C. § 1983 provides a legal mechanism through which a

plaintiff may impose liability upon individuals and entities that act under

color of state law to deprive the plaintiff of Constitutional and statutory

rights.  However, local governments cannot be held liable under a theory of

respondeat superior for claims brought under § 1983.  *Monell v. Dept. of*

*Social Servs.*, 436 U.S. 658, 691 & 694-95 (1978).  Instead, there must be

some evidence that a municipal policy or custom caused the constitutional

injury.  *See Leatherman v. Tarrant Co. Narcotics Intelligence and Coordina-*

*tion Unit*, 507 U.S. 163, 166-67 (1991); *see also  McMillan v. Monroe County,*

*Ala.*, 520 U.S. 781, 784 (1997) ("A municipality cannot be held liable under *Monell* where the alleged wrongful conduct is *contrary* to its official policy.").

Plaintiffs dedicate two paragraphs of their response brief to the City of Hoover's liability.  (Doc. 42 at 3-4.)  In those two paragraphs, they cite no legal authority and offer no reference to evidence in support of their claim against the City of Hoover.  *See Flanigan's Enters., Inc.*, 242 F.3d at 987 n.16.  Moreover, this Court was unable to find admissible evidence in the record indicating that a policy or custom of the City of Hoover—including any purported failure to train or failure to supervise—caused Plaintiffs' alleged constitutional injuries.   Therefore, summary judgment will be granted with regard to Plaintiffs' § 1983 claim against the City of Hoover.

2.    Qualified Immunity.

Officers Al-Dakka and Williams argue that the § 1983 claims against them should be dismissed because they are entitled to qualified immunity. When issues of qualified immunity are raised in cases like the one at hand, "courts are required to resolve a 'threshold question: Taken in the light most favorable to the party asserting the injury, do the facts alleged show

the officer's conduct violated a constitutional right?  This must be the initial inquiry.'" *Scott v. Harris*, 127 S. Ct. 1769, 1774 (2007) (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001)).  "If, and only if, the court finds a violation of a constitutional right, 'the next, sequential step is to ask whether the right was clearly established . . . in light of the specific context of the case.'" *Id.* (quoting *Saucier*, 533 U.S. at 201).  "Although this ordering contradicts [the] policy of avoiding unnecessary adjudication of constitutional issues, [the Supreme Court has] said that such a departure from practice is necessary to set forth principles which will become the basis for a [future] holding that a right is clearly established." *Id.* (quotations and citations omitted).

> a.    Constitutional Right?

Defendants contend that the officers did not violate Plaintiffs' constitutional rights under the Fourth Amendment because (1) their entry into the apartment was reasonable, although erroneous; (2) physical force was a reasonable response to Mr. Russell's aggressive and agitated behavior and the force used was not excessive; and (3) the officers had arguable probable cause for Mr. Russell's arrest.  (Doc. 38 at 12-25.)  However, in

support of their arguments, Defendants cite the officers' testimony and their version of the facts.  Mrs. Russell has testified quite differently regarding the events of July 15, 2004.[5]

"A warrantless entry into a suspect's home is presumed to be an unreasonable violation of the Fourth Amendment." *Holmes v. Kucynda*, 321 F.3d 1069, 1070 (11th Cir. 2003) (citing *United States v. Tobin*, 923 F.2d 1506, 1510 (11th Cir. 1991)).  "'The right of the people to be secure in their . . . houses . . . shall not be violated.'  That language unequivocally establishes the proposition that '[a]t the very core [of the Fourth Amendment] stands the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion.'" *Payton v. New York*, 445 U.S. 573, 589-90 (1980) (quoting *Silverman v. United States*, 365 U.S. 505, 511 (1961)).  "In terms that apply equally to seizures of property and to

---

[5]The Court has not been presented with the testimony of Mr. Russell.  Presumably, his statements would support and add to that of Mrs. Russell.  Due to health issues, however, Mr. Russell could not complete his deposition and is unable to give testimony at this time.  The Court asked the parties to proceed with summary judgment to the extent that the claims in this case could be resolved on the legal issues alone.  The differing accounts of what happened on the night of July 15, 2004, however, create disputes of fact material to the legal determinations in this case.  While the Court has found that it could indeed make a decision on summary judgment without the testimony of Mr. Russell, the Court nonetheless was required to keep in mind that Mr. Russell's version of events is outstanding.

seizures of persons, the Fourth Amendment has drawn a firm line at the

entrance to the house." *Id*. at 590.  "Absent exigent circumstances, that

threshold may not reasonably be crossed without a warrant." *Id*.  "[T]he

courts have upheld exigent circumstances entries:

> to break up a violent fight, *Brigham City v. Stuart*,
> --- U.S. ----, 126 S. Ct. 1943, 1949, 164 L. Ed. 2d 650
> (2006), to prevent the destruction of evidence,
> *United States v. Mikell*, 102 F.3d 470, 476 (11th Cir.
> 1996), to put out a fire in a burning building, *Michigan v. Tyler*, 436 U.S. 499, 509, 98 S. Ct. 1942, 56 L.
> Ed. 2d 486 (1978), to pursue a fleeing suspect,
> *United States v. Santana*, 427 U.S. 38, 42-43, 96 S.
> Ct. 2406, 49 L. Ed. 2d 300 (1976), to rescue a kidnapped infant, *United States v. Laboy*, 909 F.2d 581,
> 586 (1st Cir. 1990), and to attend to a stabbing
> victim, *United States v. Gillenwaters*, 890 F.2d 679,
> 682 (4th Cir.1989).

*McClish v. Nugent*, 483 F.3d 1231, 1240-41 (11th Cir. 2007).  "[C]onsent to

a warrantless entry may [also] be given by the owner of the property to be

searched." *Holmes*, 321 F.3d at 1070 (citing *Illinois v. Rodriguez*, 497 U.S.

177, 181 (1990)).  "Under either consent or exigent circumstances, an

officer who conducts a warrantless search or seizure inside the home bears

the burden of proving that his conduct was justified." *McClish*, 483 F.3d at

1241 (citing *Sammons v. Taylor*, 967 F.2d 1533, 1543 (11th Cir. 1992)).

In their initial brief in support of summary judgment, Defendants contend that exigent circumstances existed for the officers to enter the Russells' apartment because the officers reasonably believed someone in the residence was in need of immediate aid.  (Doc. 38 at 12-19.)  In their reply brief, Defendants add that Mr. Russell consented to the officers' entry by stepping backwards into the apartment and/or the officers needed to prevent possible injury to themselves due to "Mr. Russell's aggressive, defiant behavior."  (Doc. 48 at 4-5, 7.)  In their affidavits, however, the two officers say nothing about consent or observations that others in the apartment needed immediate assistance.  Rather, the officers state that they entered the apartment "to avoid the 'fatal funnel' because standing in the doorway made [them] easy targets for anyone in the apartment who may have a weapon."  (Williams Aff. ¶ 10; Al-Dakka Aff. ¶ 9.)  Yet, there is no testimony that the officers observed anything at the scene that caused them to believe they were in immediate danger.

Defendants' newly asserted theory that Mr. Russell consented to the officers' entry by backing up a few steps after answering the door is belied by the case law of this circuit and the lack of testimony from either officer

that even hints they believed they had Mr. Russell's permission to enter the apartment.  "[W]hatever relevance the implied consent doctrine may have in other contexts, it is inappropriate to sanction entry into the home based upon inferred consent."  *McClish*, 483 F.3d at 1241 (quoting *United States v. Gonzalez*, 71 F.3d 819, 830 (11th Cir. 1996)); *see also Bashir v. Rockdale County, Ga.*, 445 F.3d 1323, 1328-29 (11th Cir. 2006).  The circumstances of this case are not, as Defendants assert, "similar" to *Holmes v. Kucynda*, 321 F.3d 1069, 1079 (11th Cir. 2003), where it was undisputed that the individual who answered the apartment door stepped back and opened the door in a "gesture of acquiescence" after the officers asked if they could enter the apartment.  Neither Al-Dakka nor Williams asked permission to enter the Russells' apartment, and nothing about the alleged behavior described by the officers in this case indicates Mr. Russell's acquiescence to their entry.

Defendants have also failed to establish exigency.  Other than the fact that the officers were told they were investigating a possible domestic violence incident, the Defendants have not offered any evidence garnered from the scene indicating that they had reason to believe anyone was in

immediate danger before entering the apartment.  Mrs. Russell has testified

that her husband merely opened the door and was attempting to answer Al-

Dakka's question when the officer lunged at him without provocation.

According to the officers' testimony, Williams crossed the threshold into the

apartment and then Mr. Russell became aggressive.  Viewing the facts in the

light most favorable to Plaintiffs, there is sufficient evidence for a

reasonable jury to conclude that Al-Dakka and Williams violated Plaintiffs'

Fourth Amendment rights in entering their apartment without a warrant,

consent, or exigent circumstances, and subsequently arresting Mr. Russell.

> b.    Clearly Established?

"The next question we address in the qualified immunity analysis is

whether the constitutional right was 'clearly established' at the time of the

violation." *Bashir*, 445 F.3d at 1330.  "The relevant, dispositive inquiry in

determining whether a right is clearly established is whether it would be

clear to a reasonable officer that his conduct was unlawful in the situation

he confronted." *Id*. (quoting *Saucier v. Katz*, 533 U.S. 194, 202 (2001)).

"[*F*]*air and clear notice* to government officials is the cornerstone of

qualified immunity." *Id.* at 1331 (quoting *Vinyard v. Wilson*, 311 F.3d 1340, 1350 (11th Cir. 2002)) (emphasis in original).

"'[F]air and clear notice' may be given in various ways." *Id.* "In rare cases, 'the words of a federal statute or federal constitutional provision may be so clear and the conduct so bad that case law is not needed to establish that the conduct cannot be lawful.'" *Id.* (quoting *Vinyard*, 311 F.3d at 1350). "More frequently, however, we must look to case law existing at the time of the violation to see if the right was clearly established." *Id.* "While 'some broad statements of principle in case law are not tied to particularized facts and can clearly establish law applicable in the future to different sets of detailed facts,' more often, the facts are so material to the violation at issue that such generalized principles are insufficient, and we must look to precedent that is factually similar to the case at hand." *Id.* (quoting *Williams v. Consol. City of Jacksonville*, 341 F.3d 1261, 1270 (11th Cir. 2003)).

*Viewing the facts in the light most favorable to Plaintiffs*, a "reasonable law enforcement officer . . . would have known he could not enter the home and arrest [Mr. Russell] without a warrant, exigent

circumstances, or consent." *Id*.  This has been a clearly established violation of the Fourth Amendment since *Payton v. New York*, 445 U.S. 573 (1980), "set[] forth the law with 'obvious clarity.'" *Id*. (quoting *Vinyard*, 311 F.3d at 1351).   Therefore, Al-Dakka and Williams are not entitled to qualified immunity with regard to Plaintiffs' claim that the officers unlawfully entered their apartment and Mr. Russell's claim that he was unlawfully arrested.

c.   Excessive Force.

Plaintiffs have also argued in their summary judgment memorandum that the officers' use of force while arresting Mr. Russell was excessive and unreasonable.   Defendants have proffered testimony explaining the "Resistence Control Continuum" and maintain the officers used minimal force necessary to gain control of Mr. Russell.  "Under this Circuit's law[, however,] a claim that any force in an illegal stop or arrest is excessive is subsumed in the illegal stop or arrest claim and is not a discrete excessive force claim."  *Id*. (quoting *Jackson v. Sauls*, 206 F.3d 1156, 1171 (11th Cir. 2000)).  If, as Plaintiffs contend, the officers were not justified in arresting Mr. Russell, they did "not have the right to use any degree of force in

making that arrest." *Id*. at 1332. "An excessive force claim evokes the Fourth Amendment's protection against the use of an unreasonable quantum of force (i.e., non-de minimis force unreasonably disproportionate to the need) in effecting an *otherwise lawful* arrest." *Id*. (emphasis added). Therefore, Mr. Russell's "excessive force claim is entirely derivative of, and is subsumed within, the unlawful arrest claim,"[6] and it "fails as a matter of law."[7] *Id*.

B.    State Law Claims.

With regard to Plaintiffs' state law claims, the Court agrees with Defendants that they are entitled to summary judgment because Plaintiffs have not submitted any legal argument or citation to authority to rebut

_____

[6]The Court also notes that Plaintiffs' Complaint (Doc. 1) does not use the words "excessive force," and does not state any alternative claims—namely, that if Mr. Russell's arrest was lawful, the force used in executing such arrest was unreasonable.

[7]"This is not to say that [Mr. Russell] cannot recover damages for the force used in his arrest. To the contrary, the damages recoverable on an unlawful arrest claim 'include damages suffered because of the use of force in effecting the arrest.'" *Bashir*, 445 F.3d at 1332 (quoting *Williamson v. Mills*, 65 F.3d 155, 158-59 (11th Cir. 1995); *Motes v. Myers*, 810 F.2d 1055, 1059 (11th Cir. 1987) (stating that "[i]t is obvious that if the jury finds the arrest unconstitutional, the use of force and the search were unconstitutional and they become elements of damages for the § 1983 violation"). "But, to permit a jury to award damages on [Mr. Russell's] excessive force and unlawful arrest claims individually 'would allow [him] to receive double the award for essentially the same claims.'" *Id*. (quoting *Cortez v. McCauley*, 438 F.3d 980, 996 (10th Cir. 2006)).

Page 18 of  19

Defendants' assertion of immunity.  Because Plaintiffs do not address their state law claims in their opposition brief, those claims will be dismissed as waived.  *See Flanigan's Enters., Inc. v. Fulton County, Ga.*, 242 F.3d 976, 987 n.16 (11th Cir. 2001).

V.     Conclusion.

For the reasons stated above, Defendants' motion for summary judgment will be granted in part and denied in part.  Plaintiffs' § 1983 claims for violation of their Fifth Amendment rights to due process and Fourth Amendment rights to be free from excessive force will be dismissed. Plaintiffs' state law claims will be dismissed.  And, Plaintiffs' remaining § 1983 claims for violation of their Fourth Amendment rights to be free from unlawful search and seizure will proceed to trial.  A separate order will be entered.

Done this 18th day of June 2008.

_____

L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE
153671